**Julia E. Dean et al., Appellants, v. John L. Kellogg and Kellogg Company, Appellees.**

**Gen. No. 43,460.**

Heard in the first division of this court for the first district at the October term, 1945. Opinion filed January 7, 1946. Rehearing denied January 21, 1946. Released for publication January 21, 1946.

JOSEPH B. GILBERT and PHILIP C. SHEEHAN, both of Chicago, for appellants.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS and CONCANNON, DILLON, SNOOK & ARTHUR, all of Chicago, for appellees; J. B. MARTINEAU and BRUCE S. PARKHILL, both of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

October 2, 1944, plaintiffs, minority stockholders of Warren-Teed Seed Company, filed their complaint in chancery against defendants, John L. Kellogg, the majority stockholder of the corporation, for an accounting of the corporation's assets, which it was alleged were fraudulently converted by him to his own use after the dissolution of the corporation; and against defendant Kellogg Company, a corporation, for assets it had received from defendant, Kellogg, with knowl-

edge of the fraud. John L. Kellogg filed his motion to dismiss the suit on the ground that it was barred by the Statute of Limitations (Par. 16, ch. 83, Ill. Rev. Stats. 1945 [Jones Ill. Stats. Ann. 107.275]); that plaintiffs were guilty of laches in that they were complaining of matters which occurred more than 12 years before the institution of the suit. Defendant, Kellogg Company, corporation, filed its motion to dismiss the suit, setting up the Statute of Limitations, laches, that the matters involved had been adjudged in a decree entered by the Circuit court of Calhoun county, Michigan, April 29, 1939, and other grounds not necessary to mention here. Both motions were sustained, the suit dismissed and plaintiffs appeal.

The material allegations of the complaint as amended are that plaintiffs are minority stockholders of the Warren-Teed Seed Company, a Nevada corporation, owning 131,000 shares of its capital stock consisting of 350,000 of Class A and 400,000 shares of Class B, all of which were without par value. That defendant, John L. Kellogg, since February 24, 1926, was at all times the majority stockholder and in control of the corporation which was engaged in the business of manufacturing and operating seed cleaning machinery and buying, cleaning and selling all kinds of seed with its principal place of business in Chicago. That on November 10, 1930, Seedtown Products, Inc., was organized under the laws of Delaware, with an authorized capital stock of 350,000 shares of Class A, and 400,000 shares of common stock, all without par value; that John L. Kellogg was one of the directors and the president of the Seedtown Corporation; that the Seedtown Corporation was organized in pursuance of a plan of reorganization by the terms of which Seedtown was to acquire in exchange for its stock, the business and assets of the Warren-Teed Company and all outstanding capital stock of the Kellogg Terminal Warehouses, Inc., an Illinois corporation.

It is further alleged that the Kellogg Warehouses, Inc., owned 8.64 acres of land improved with several buildings used for warehouses and manufacturing purposes located in Chicago, which properties were valued at $3,000,000, subject to a mortgage of $925,000. That 4,160 shares of its capital stock were outstanding, practically all of which, with the exception of qualifying shares, were owned by defendant, John L. Kellogg. That pursuant to the plan of reorganization, the Seedtown Corporation, on November 14, 1930, acquired all of the outstanding stock of Kellogg Warehouses in exchange for 66,282 shares of its Class A stock and on December 24, 1930, acquired all of the assets of the Warren-Teed Corporation subject to all its liabilities in exchange for 11,094 shares of its Class A and 392,862.2 shares of its common stock. That the Seedtown Company assumed an alleged indebtedness of Warren-Teed Corporation to John L. Kellogg of $219,740.05, a bank loan of $25,000 and an alleged indebtedness of $283,534.18, to the John L. Kellogg Seed Co., a corporation wholly owned by defendant, John L. Kellogg. That as a part of the reorganization the liabilities were cancelled and the bank loan assumed by John L. Kellogg, personally, in exchange for shares of Seedtown on a basis of $15 a share of Class A stock, as a result of which 16,316 shares of Class A stock of the Seedtown Company were issued to John L. Kellogg, and 18,902 shares of Class A stock to the John L. Kellogg Seed Company. That as a result of the reorganization Seedtown acquired assets in excess of $3,750,000, of which $2,200,000 represented a net value of the Kellogg Warehouses; $1,000,000 represented by patents and $480,000 represented seed cleaning machinery, and Warren-Teed became a holding company, its sole asset being 11,094 shares of Class A and 392,862.2 shares of common stock of Seedtown which were never distributed to the stockholders of Warren-Teed. That because of John L. Kellogg's control of

the several corporations involved in the reorganization he so manipulated the books and accounts of the several corporations by means of fictitious and arbitrary entries that Warren-Teed Company, and later Seedtown, were indebted to him and to the John L. Kellogg Seed Co.; that in 1931 the books of the Seedtown Company erroneously showed a fictitious indebtedness to John L. Kellogg in excess of $215,000 and a fictitious indebtedness to John L. Kellogg Seed Company of $65,000; that in June 1931, John L. Kellogg embarked upon a fraudulent scheme to convert the assets of Seedtown to his own use. And to carry out the scheme he filed suit in the Municipal court of Chicago against Seedtown to recover the $215,000 above mentioned, and the interest thereon and on August 4, 1931, judgment was entered by default for $220,006.90; that he caused the dissolution of the Kellogg Seed Company December 11, 1931 and the dissolution of Seedtown December 21, 1931, and permitted the charter of Warren-Teed to be revoked in March, 1932, for failure to file a list of its officers and pay a fee of $7.50; that upon the dissolution of the Seedtown Co., defendant, Kellogg, fraudulently converted to his own use and benefit all of the assets of the Seedtown Corporation without ever accounting for them to the other stockholders. That among the assets fraudulently converted by John L. Kellogg to his own use were secret formulae and inventions for popping cereal grains, particularly rice and wheat formulae and inventions developed by Warren-Teed and its successor Seedtown, which were rightfully the property of those corporations. That afterward John L. Kellogg, unknown to plaintiffs, conveyed some of the assets, including the secret formulae, etc., to the defendant, Kellogg Company, a Delaware corporation, which took such assets with knowledge of the fraud. That afterward defendant, Kellogg Company, proceeded to use the commercial formulae, etc., and made large profits which, in equity and jus-

tice, should belong to the stockholders of Warren-Teed and Seedtown corporations. "That by reason of the dissolution of Seedtown Products, Inc. title to all of its assets passed by operation of law to its stockholders, of whom the largest was Warren-Teed Seed Company which owned a majority of the outstanding stock of Seedtown Products, Inc." That by reason of the subsequent dissolution of Warren-Teed "the equitable and legal ownership of its assets passed by operation of law to its stockholders of whom plaintiffs are a number."

It is further alleged that John L. Kellogg sent a letter dated December 7, 1931, to the stockholders of Warren-Teed Company which owned a big majority of the outstanding shares of Seedtown, urging the immediate dissolution of Seedtown, in which letter statements appeared which were false, which Kellogg knew or by the exercise of due diligence should have known were false; in which letter it was said that Seedtown was indebted to him for some $220,000, and it is alleged in the complaint that, as a matter of fact, upon proper statement of the account, he Kellogg, was indebted to Seedtown in an amount exceeding $190,000; that at the meeting of the stockholders of Seedtown, at which its dissolution was voted, Kellogg was the owner or in control of over 500,000 shares of the capital stock, holding it in his various capacities, which number of shares he cast for the dissolution of Seedtown.

It is further alleged that upon receipt of Mr. Kellogg's circular letter above mentioned, Julia E. Dean, one of the plaintiffs, filed a stockholders' suit in the Superior court of Cook county to restrain the dissolution of Seedtown, the transfer of any of the corporate property and for an accounting. That the suit was dismissed on April 13, 1933, without an adjudication on the merits and on April 21, 1933, Julia Dean filed a stockholders' representative suit in the United

States District Court in Chicago against John L. Kellogg, W. K. Kellogg and Kellogg Company, for an accounting and for all property and assets appropriated by them for their own use in fraud of the stockholders of Seedtown and Warren-Teed Companies; that that suit was dismissed October 13, 1936, for want of valid service on defendants without an adjudication of the merits. That in May, 1938, plaintiffs in the case before us, filed another stockholders' suit in the Circuit court of Calhoun county, Michigan, against John L. Kellogg, W. K. Kellogg, Kellogg Company, Warren-Teed and Seedtown companies, for an accounting for assets wrongfully misappropriated, etc.; that that suit was dismissed for lack of jurisdiction over the necessary parties, also without passing on the merit; that on March 24, 1942, the defendant, Kellogg Company, a Delaware corporation, was admitted to transact its business in the State of Illinois, and that plaintiffs learned that the Kellogg Company was authorized to do business in Illinois but a few months prior to the filing of the instant suit.

Plaintiffs contend that "A majority stockholder who after the dissolution of a corporation converts the corporation's property and assets to his own use becomes in equity a trustee for the minority stockholders, and is under a duty to account." We think this is substantially a correct statement of the law. In *Dixmoor Golf Club v. Evans*, 325 Ill. 612, which was a suit brought to compel defendants to account for secret profits made by them as organizers of a club while they were also its directors and in the management and absolute control of it the court said the decision of the case depends "upon the fiduciary relation which the directors of a corporation hold to the corporation and to the stockholders. The law is well settled that a trustee cannot without a breach of the trust deal with its subject matter in such a manner as to make a profit for his own benefit. It requires no very keen moral

perception to recognize the obvious justice of this universal rule of law, of justice and of morality. The directors of a corporation are trustees of its business and property for the collective body of stockholder's in respect to such business. They are subject to the general rule in regard to trusts and trustees, that they cannot, in their dealings with the business or property of the trust, use their relation to it for their own personal gain. It is their duty to administer the corporate affairs for the common benefit of all the stockholders and exercise their best care, skill and judgment in the management of the corporate business solely in the interest of the corporation.''

In *Becker v. Billings,* 304 Ill. 190, the court, in passing on the relation of the directors of an insolvent corporation said quoting from *Gottlieb v. Miller,* 154 Ill. 44, (p. 198) that: '' . . . 'At most, the assets of a corporation are, under some circumstances, a *quasi* trust fund, and the directors or officers of the corporation, under some circumstances, *quasi* trustees.' ''

Plaintiffs further contend that a ''Mere lapse of time will not constitute laches where, ever since the wrongs complained of were committed, plaintiffs diligently, though unsuccessfully, pursued their remedy and sought to bring defendants to account, and defendants, confessed wrongdoers, were not misled or prejudiced by the delay,'' citing a number of Illinois cases and *Southern Pacific v. Bogert,* 250 U. S. 483. In that case it was held that to constitute laches it was essential that there be acquiescence in the alleged wrong or lack of diligence in seeking a remedy in addition to the lapse of time, and where there was a delay of over 22 years on the part of the minority stockholders in seeking to impress a trust on shares of stock in the new corporation held by a minority, plaintiffs were not guilty of laches where it was shown they had been diligent in attacking foreclosure and reorganization proceedings. And it was further held that long failure

to discover the proper remedy, though well known, did not establish laches if there had been due diligence and the delay had not prejudiced the defendants. In that case there was a reorganization agreement in December 1887, a decree of foreclosure and sale May 4, 1888. The sale was held September 8, 1888, and the stock in the new company was delivered February 10, 1891. The suit was not begun until July 26, 1913. In delivering the opinion of the court, Mr. Justice BRANDEIS said (p. 488) : "This suit was not begun until July 26, 1913; and not until that time was there a proper attempt to assert the specific equity here enforced; namely, that the Southern Pacific received the stock in the new Houston Company as trustee for the stockholders of the old. More than twenty-two years had thus elapsed since the wrong complained of was committed. But the essence of laches is not merely lapse of time. It is essential that there be also acquiescence in the alleged wrong or lack of diligence in seeking a remedy. Here plaintiffs, or others representing them, protested as soon as the terms of the reorganization agreement were announced; and ever since, they have with rare pertinacity and undaunted by failure persisted in the diligent pursuit of a remedy as the schedule of the earlier litigation referred to in the margin demonstrates. Where the cause of action is of such a nature that a suit to enforce it would be brought on behalf not only of the plaintiff but of all persons similarly situated, it is not essential that each such person should intervene in the suit brought in order that he be deemed thereafter free from the laches which bars those who sleep on their rights. *Cox v. Stokes,* 156 N. Y. 491, 511. Nor does failure, long continued, to discover the appropriate remedy, though well known, establish laches where there has been due diligence and, as the lower courts have here found, the defendant was not prejudiced by the delay."

Counsel for defendants in their brief say that plaintiffs relied principally on the decision in the *Bogert* case, but they say that case was decided under the New York law which is not the law in Illinois. And that the mere fact that plaintiffs have been engaged in unsuccessful litigation does not excuse their delay for the reason that it was held in *Becker v. Billings,* 304 Ill. 190, that the Statute of Limitations would commence to run in favor of directors of a corporation charged with fraudulently appropriating the corporation's assets either at the time of the doing of the act complained of, or at the time of their discovery.

In the *Becker* case, a national bank and a state savings bank, which was being operated in the same building and substantially by the same officers and directors, failed December 18, 1905. In 1910 two bills were filed in the Circuit court of Cook county, the first by certain stockholders of the national bank in behalf of themselves and of all other stockholders who might choose to join, and the other by Becker as a stockholder of the state bank, in behalf of himself and all other stockholders who might choose to join him. The bills charged misappropriation and loss of funds of the respective banks in consequence of the negligence of Billings in violation of his duties as director. The suit involving the national bank was decided against plaintiffs and an appeal taken to the Appellate and the Supreme courts of this state. ''In the meantime the State bank case was continued in the circuit court, the time for filing the amended and supplemental bill being extended from time to time until after the final decision in the National bank case in the Supreme court, in February 1917.'' On August 21, 1918, an amended original and supplemental bill was filed in the state bank case. In the original complaint in that case Billings was charged with negligence in failing to attend to his duties as a director. In the amended and

supplemental bill filed in 1918, he and the others were charged with fraudulent conduct. The court said (p. 203): "The latter bill, instead of being founded on non-feasance, mere neglect and omission to do anything, charges a fraudulent breach of trust, actual, intentional wrongdoing," etc. The court held that the amended and supplemental bill stated a new cause of action which was barred by the Statute of Limitations.

Counsel for defendants further contend that the Circuit court of Calhoun county, Michigan, decreed that plaintiffs were "guilty of inexcusable laches" in bringing the suit in Michigan and that decree having been affirmed by the Supreme court of Michigan, *Dean v. Kellogg,* 294 Mich. 200, it is *res judicata* and therefore plaintiffs "are foreclosed as to every ground of recovery they might have asserted in the Michigan suit, whether they did so or not."

■ That case was brought by plaintiffs against John L. Kellogg, W. K. Kellogg, Kellogg Company, a Delaware corporation, Warren-Teed Seed Company, a Nevada corporation and Seedtown Products, Inc., a Delaware corporation. The Circuit court sustained the motion of defendants, Kellogg Company and W. K. Kellogg, to dismiss on the ground (1) of want of jurisdiction, (2) laches and (3) multifariousness. In that case the court found that the suit, having been brought on behalf of the stockholders of Warren-Teed and Seedtown Products Corporations, the corporations were necessary and indispensable parties and that the burden was upon plaintiffs to bring them before the court and that they had not been brought before the court in that case because one was a Nevada and the other a Delaware corporation and were not "domesticated in Michigan," etc. The court said: "and it further appearing that they cannot be brought in, that the Court is without jurisdiction to pass upon the matters sought to be litigated." That the frauds charged in the bill are alleged acts of the defendant,

John L. Kellogg alone; that he was a resident in Chicago, Illinois, and was not before the court. The Supreme court of Michigan in passing on the case said: "Only W. K. Kellogg and Kellogg Company were personally served with process in the State of Michigan; an order of publication was made as to defendants John L. Kellogg, Warren-Teed Seed Company and Seedtown Products, Inc. They have not appeared.

"The question of jurisdiction over necessary parties to the suit or of the subject of action is controlling. Defendant John L. Kellogg, a resident of Illinois, is asked to account for alleged wrongs to Warren-Teed and Seedtown; he has not been personally served within the State, nor has he submitted to the jurisdiction of this court. We are powerless to render any personal decree against him; our process, personal or constructive, is confined to the limits of this State so far as acquiring personal jurisdiction over nonresidents. . . . The dismissal of the bill was correct as to him." And continuing the court said: "A more difficult problem is presented as to our jurisdiction to adjudicate rights belonging to Warren-Teed and Seedtown." That the two corporations were necessary parties and since they were not before the court, it was without jurisdiction and the dismissal of the cause was therefore proper. And after further discussion the court continuing said:

"In view of our holding on the jurisdictional question, we need not discuss the other questions raised in regard to the right of the court to interfere with the internal conduct of the affairs of a foreign corporation, the attack on the Illinois judgment for fraud in its procurement, the inquiry into the validity of the dissolution of the Delaware corporation, plaintiffs' laches, and the issue of multifariousness." And the decree of dismissal was affirmed. We hold that the decision of the Supreme court, in affirming the decree of dismissal entered by the Circuit court of Calhoun

county, was not *res judicata* of the matters involved in that case, for the reason that the decision was expressly placed on the ground that the court was without jurisdiction for want of necessary parties.

■ ■ Holding as we do, that under the law announced in the *Becker* case, 304 Ill. 190, the suit is barred by the Statute of Limitations, the decree of the Superior court of Cook county is affirmed.

*Decree affirmed.*

MATCHETT, P. J., and NIEMEYER, J., concur.