MID-AMERICAN ELEVATOR COMPANY, INC., Plaintiff and Citation Petitioner-Appellee and Cross-Appellant, v. NORCON, INC., Defendant (Douglas Kaulas *et al.*, Citation Respondents-Appellants and Cross-Appellees).

First District (5th Division)   Nos. 1—95—4299, 1—96—1513 cons.

Opinion filed November 27, 1996.—Rehearing denied April 23, 1997.—Modified opinion filed May 2, 1997.

John S. Graettinger, Jr., of Chicago, for appellants.

David Belofsky & Associates, of Chicago (David Belofsky and James Merriman, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The petitioner, Mid-American Elevator Company, commenced supplementary proceedings against the respondents, Douglas and Patricia Kaulas, to discover assets belonging to the judgment creditor, Norcon, Inc. The court determined that the Kaulases were unlawfully holding property belonging to Norcon and entered judgment

against them for the unpaid balance of an underlying judgment against Norcon in favor of Mid-American. The Kaulases now appeal, raising as issues whether (1) the court relied upon an inapplicable statute in holding them liable for the remainder of the judgment against Norcon; (2) the court denied them due process by entering judgment against them without a trial; and (3) the court erroneously entered judgment against Patricia Kaulas when there was no evidence she was involved in the continuation of Norcon's business after dissolution. On cross-appeal, Mid-American argues that the court erred in denying its motion to recover attorney fees and costs for the citation proceedings.

Norcon was a closely held corporation engaged in construction contracting. At all times relevant, its primary shareholders were Douglas and Patricia Kaulas, who alternated as its president and secretary. On March 6, 1991, Norcon was employed as general contractor for a comprehensive renovation job and subcontracted with Mid-American to install a service elevator for the project. On November 18, 1991, Mid-American brought suit against Norcon for breach of this subcontract.

On September 1, 1994, while Mid-American's suit remained pending, Norcon was involuntarily dissolved by the Secretary of State for failing to pay franchise taxes. It is undisputed that although the corporation was never reinstated, it continued doing business from the date of dissolution until after the initiation of the citation proceedings at issue.

On May 19, 1995, the court in the contract suit entered judgment in favor of Mid-American and against Norcon in the amount of $75,930, plus prejudgment interest and costs. When the judgment remained unpaid on May 25, 1995, Mid-American served the Kaulases, as Norcon's officers of record, with the citation petition at issue. See 735 ILCS 5/2—1402 (West 1994). The citation contained a standard restraining provision, prohibiting the Kaulases from transferring or disposing of Norcon's property until after the resolution of the citation proceedings.

The evidence at the citation proceedings was undisputed. At a June 2, 1995, hearing, Douglas admitted that Norcon was still in business and that he was its president and Patricia was its secretary. Mid-American offered uncontested documentary proof that, from the date of the dissolution through the time of the proceedings, Norcon maintained an active bank account, paid Douglas from corporate proceeds, and continued to employ workers and pay them from a corporate account. Since the dissolution, Norcon had bid on several projects, two of which it had been awarded and was currently

performing; namely, one for Frederic Lane, dated August 29, 1994, and executed by Lane on October 3, 1994, and another for Linda and Benjamin Ruff, dated June 1995.

The evidence also showed that on June 2, 1995, Douglas endorsed a $20,474 check, payable to Norcon from Lane, over to Henry Electric Company, Inc., a subcontractor on the Lane project. According to the affidavit of Robert Pype, an employee of Henry Electric, the check was to settle a Norcon debt to Henry in the amount of $12,150. At Douglas' instruction, the $8,324 overpayment was then returned by Henry in the form of a check made payable to Patricia Kaulas. A check in the amount of $10,000 was also issued to Patricia by Henry Electric on June 2, 1995.

Further, upon receipt of the citation, Douglas began depositing checks made payable to Norcon into a separate account designated "Norenco". He deposited into the Norenco account a check from Lane to Norcon in the amount of $10,485 and a check from the Ruffs to Norcon totalling $38,550. Douglas also admitted making disbursements from the Norenco account after June 2, 1995, to pay Norcon's suppliers and subcontractors.

In June and July of 1995, checks totalling over $9,000 were drawn on the Norenco account and deposited into a personal account held by Patricia at the Midtown Bank and Trust Company. Funds from Patricia's account were then disbursed to pay Norcon's employees and other creditors. Money was also withdrawn from this account to cover the Kaulases' personal expenses.

On August 22, 1995, Mid-American filed motions seeking the turnover of $11,026.15 held in a Norenco account, and $545.82 held in a Norcon account, all in partial satisfaction of the unpaid underlying judgment. The court granted the motion and also extended temporary restraining orders previously entered against the Kaulases precluding them from withdrawing certain funds from Midtown Bank.

The Kaulases subsequently filed a motion seeking return of these funds and to dissolve the temporary restraining orders entered against them. In support of their motion, the Kaulases offered the affidavit of Douglas Kaulas, which admitted that Norcon had continued doing business after the dissolution. Douglas averred that he received notice of the dissolution but did not understand its significance. Attached to Douglas' affidavit was a statement of Norcon's assets as of September 1994, most of which Douglas still had in his possession. Douglas offered to tender the assets, which totalled less than $7,792, to the court as Norcon assets. Douglas averred that accounts receivable existing at the time of dissolution were paid to suppliers,

subcontractors, and other employees for services rendered on Norcon jobs and that he mistakenly disbursed Norcon funds from the Lane and Ruff contracts to pay creditors.

On November 13, 1995, Mid-American moved for the entry of judgment against the Kaulases, jointly and severally, for the outstanding balance of the judgment against Norcon. Mid-American alleged that, as of that date, only $59,233.66 of the judgment had been satisfied and more than $40,000 remained outstanding. Mid-American further alleged that Douglas was the beneficial owner of real estate at 1922 N. Burling and that he had exclusive power of direction over the land trust having title to the property. Mid-American requested that the power of direction over the Burling land trust be turned over to Mid-American or that the property be sold and the proceeds applied in satisfaction of the judgment against Norcon.

On November 14, 1995, the trial court entered judgment against Douglas and Patricia Kaulas, jointly and severally, in the amount of $44,045.01. The court found that, notwithstanding the dissolution, the Kaulases had continued doing business as Norcon until the citation proceedings, carrying out contracts and receiving and disbursing funds on behalf of the corporation. The court denied the Kaulases' motion for a return of the funds turned over to Mid-American and for a dissolution of the restraining orders entered against them. It also denied a motion by Mid-American for attorney fees and costs it incurred in the citation proceedings. The instant appeal and cross-appeal followed.

■ Supplementary proceedings under section 2—1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1402 (West 1994)) are designed to assist a judgment creditor in discovering assets of the judgment debtor in order to satisfy an unpaid judgment. *Pyshos v. Heart-Land Development Co.*, 258 Ill. App. 3d 618, 622-23, 630 N.E.2d 1054 (1994). The procedure authorizes the creditor to conduct an examination of a third party (735 ILCS 5/2—1402(a) (West 1994)), and upon a showing that the third party is holding assets belonging to the judgment debtor, empowers the court to summarily compel the application of discovered assets or income to the satisfaction of the judgment, as long as the judgment debtor would have the right to recover such assets from the third party. *Pyshos*, 258 Ill. App. 3d at 623; *Bentley v. Glenn Shipley Enterprises, Inc.*, 248 Ill. App. 3d 647, 651, 619 N.E.2d 816 (1993); see also 735 ILCS 5/2—1402(b)(3), (b)(4) (West 1994). The provisions of section 2—1402 are to be liberally construed, and the burden lies with the petitioner to show that the citation respondent possesses assets belonging to the judgment creditor. *Bentley*, 248 Ill. App. 3d at 652.

■ The Kaulases first argue that, in holding them liable for the remainder of the judgment against Norcon, the trial court erroneously relied upon section 8.65(a)(3) of the Business Corporation Act of 1983 (Act) (805 ILCS 5/8.65(a)(3) (West 1994)), which is inapplicable to the situation at bar. Section 8.65(a)(3) provides:

"The directors of a corporation that carries on its business after the filing by the Secretary of State of articles of dissolution, otherwise than so far as may be necessary for the winding up thereof, shall be jointly and severally liable to the creditors of such corporation for all debts and liabilities of the corporation *incurred in so carrying on its business.*" (Emphasis added.) 805 ILCS 5/8.65(a)(3) (West 1994).

The Kaulases maintain that this section is inapplicable because, *inter alia*, it pertains solely to debts and liabilities incurred after dissolution, and Mid-American's case against Norcon was initiated on November 18, 1991, almost three years before Norcon was dissolved. Additionally, the Kaulases assert that the court wrongly concluded that the money they made from post-dissolution contracts belonged to Norcon, when Norcon was no longer in existence. In response, Mid-American argues that because the Kaulases continued doing business as Norcon in complete disregard of laws requiring a winding-up process and payment of creditors, they must be held liable for the outstanding judgment against the corporation. We agree that section 8.65(a)(3) cannot reasonably be interpreted to impose liability on the Kaulases for the outstanding judgment against Norcon.

■ In construing a statute, a court must give the language its plain and ordinary meaning. The statute should be read as a whole and all its material aspects considered together. *Trittipo v. O'Brien*, 204 Ill. App. 3d 662, 666, 561 N.E.2d 1201 (1990). The court must interpret the statute on the basis of what was written and not search for any subtle or not readily apparent meaning. *Trittipo*, 204 Ill. App. 3d at 666.

■ The opening phrase of section 8.65(a)(3) is directed specifically towards directors of a corporation that "carries on its business *after* *** dissolution*," and the predicate imposes liability "for all debts and liabilities *** *incurred in so carrying on its business.*" (Emphasis added.) 805 ILCS 5/8.65(a)(3) (West 1994). The plain meaning of this language creates liability only for debts incurred during and as a result of the illicit continuation of business after dissolution.

In the case at bar, there is no dispute that Mid-American's case against Norcon was initiated nearly three years before Norcon's dissolution. The fact that the judgment was entered after dissolution is of no consequence, because the judgment was based exclusively upon

the conduct of Norcon prior to dissolution. A corporation is an entity separate and distinct from its officers, directors, and shareholders, and the officers, directors and shareholders are generally not liable for corporate debts or liabilities. *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 172-73, 632 N.E.2d 1015 (1994); *McCracken v. Olson Cos.*, 149 Ill. App. 3d 104, 109, 500 N.E.2d 487 (1986). In light of the fact that Norcon's liability to Mid-American was incurred prior to dissolution, the court erred in holding the Kaulases liable for the judgment against Norcon.

■ Mid-American also refers us to section 3.20 of the Act, which is similarly unavailing. That section states:

> "All persons who assume to exercise corporate powers without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." 805 ILCS 5/3.20 (West 1994).

This section by its plain language pertains to debts or liabilities incurred or arising as a result of the illicit continuation of business. Again, the conduct giving rise to the judgment at issue occurred long before Norcon's dissolution and was not the result of the fact that the Kaulases wrongfully continued doing business as Norcon, Inc., thereafter.

■ However, to the extent the Kaulases retained or disposed of Norcon assets after dissolution, they are responsible for a full accounting. Dissolution effects neither a transfer of title to corporate assets (805 ILCS 5/12.30(c)(1) (West 1994); *In re Lipuma*, 167 B.R. 522 (N.D. Ill. 1994)), nor an abatement of pending civil claims against the corporation (805 ILCS 5/12.30(c)(5) (West 1994)). A corporation must adhere to all corporate formalities during the winding-up process; shareholders are entitled to the residue of corporate funds only after providing for the rights of corporate creditors and the legal claims of third persons. *Lasday v. Weiner*, 273 Ill. App. 3d 461, 466, 652 N.E.2d 1198 (1995); *Snyder v. Nathan*, 353 F.2d 3 (7th Cir. 1965).

A shareholder may not treat corporate assets as his own prior to completion of the winding-up process (*Lasday*, 273 Ill. App. 3d at 466), and a corporate officer cannot serve himself first by manipulating corporate affairs to the detriment of creditors. *O'Connell v. Pharmaco, Inc.*, 143 Ill. App. 3d 1061, 1070-71, 493 N.E.2d 1175 (1986); see also *Dean v. Kellogg*, 327 Ill. App. 520, 526, 64 N.E.2d 551 (1946), *aff'd*, 394 Ill. 495, 68 N.E.2d 898 (1946). In any transaction in which an officer acquires corporate property, the burden of proof lies with him to establish that the transaction was fair. *O'Connell*, 143 Ill. App. 3d at 1070. Further, a majority stockholder who, after dissolution, converts corporate property and assets to his own use becomes

an equitable trustee of that property for the benefit of corporate creditors. *Blankenship v. Demmler Manufacturing Co.*, 89 Ill. App. 3d 569, 572, 411 N.E.2d 1153 (1980); see also *Dean*, 327 Ill. App. at 526; 16A W. Fletcher, Cyclopedia of Corporations § 8130, at 258 (1995).

■ In this case, there is no question that Norcon's assets as of September 1, 1994, should have been set aside for the benefit of Norcon's creditors, including Mid-American. However, the record in this case is insufficient for this court to ascertain the value of Norcon's property on that date; thus, remand is necessary. Douglas admitted in his affidavit that, upon dissolution, he retained Norcon property in the amount of $7,792. This amount unquestionably must be held in trust for the benefit of Mid-American and Norcon's other creditors.

A determination must be made as to whether the Lane contract belonged to Norcon or the Kaulases. A copy of the contract in the record dated August 29, 1994, was not executed by Frederic Lane until October 3, 1994; however, the contract also indicates that work was to begin on August 29, 1994. On remand, the court should determine whether the Lane contract commenced before or after dissolution. Any funds or assets found to belong to Norcon that were used for the Kaulases' benefit must be disgorged and placed in trust for Norcon's creditors. In view of our decision on this issue, we do not reach the Kaulases' other arguments for reversal, that the court denied them due process, and that it erred in entering judgment against Patricia Kaulas.

On cross-appeal, Mid-American challenges the court's denial of its petition for attorney fees and costs.

After granting its motion for turnover, the court gave Mid-American leave to file a petition for attorney fees and costs. In this petition, Mid-American sought compensation for the substantial expense it allegedly incurred in fighting the Kaulases' "contemptuous" violations of the citation lien and the restrictions against transfer of Norcon property. Mid-American claimed that the Kaulases repeatedly sought to conceal Norcon's property by diverting funds into the Norenco and Patricia Kaulas checking accounts, and then disbursing money out of Patricia's account to pay subcontractors on the Lane and Ruff projects and to cover personal expenses. Mid-American further asserted that Douglas testified untruthfully at the citation proceedings, stating that Norcon had no employees, and attempting to mislead Mid-American's counsel regarding the whereabouts and availability of documents responsive to the citation. Mid-American requested reasonable attorney fees in the amount of $24,520, plus expenses totalling $3,098.25, incurred in prosecuting the citation proceedings. The trial court awarded it costs in the amount of $2,346.20, but otherwise denied the petition.

Mid-American now argues that the court erred in refusing to find the Kaulases in contempt either under Code section 2—1402(d)(1) or, alternatively, under the court's inherent power.

■ Section 2—1402(d)(1) authorizes a court to "punish any party who violates the restraining provision of a citation as and for a contempt, or if the party is a third party[, to] enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this section." 735 ILCS 5/2—1402(d)(1) (West 1992). Apart from this section, judges have inherent discretion to punish contemptuous behavior, and they are not strictly bound in this regard by the Code (735 ILCS 5/1—101 *et seq.* (West 1992)). See, *e.g., Welch v. City of Evanston*, 181 Ill. App. 3d 49, 56, 536 N.E.2d 866 (1989); *Comet Casualty Co. v. Schneider*, 98 Ill. App. 3d 786, 793, 424 N.E.2d 911 (1981). The court may properly assess attorney fees as a sanction as long as the fees have been proven reasonable through detailed records. *Welch*, 181 Ill. App. 3d at 56; see also *Frank B. Hall & Co. v. Payseur*, 99 Ill. App. 3d 857, 860, 425 N.E.2d 1002 (1981); *Comet*, 98 Ill. App. 3d at 793 (an appropriate sanction is fees covering the cost of the contempt proceeding).

■ However, the determination to enter a contempt finding is a matter of discretion with the trial court that cannot be disturbed on review absent an abuse of that discretion. *Frank B. Hall*, 99 Ill. App. 3d at 860. Further, the supreme court has restricted the propriety of a contempt finding under section 2—1402(d)(1) against third parties who dispose of property of the judgment debtor in good faith, though erroneously. *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 320, 533 N.E.2d 1080 (1989), citing 735 ILCS 5/2—1402(d)(1) (West 1992)).

■ In this case, the court awarded Mid-American its costs under section 2—1402 for the citation proceedings, but declined to find the Kaulases in indirect civil contempt. The court determined that although Douglas violated the restriction against the transfer of Norcon's assets, he did not do so with malice aforethought. We have received and reviewed the transcript of proceedings on this issue and find that there is no basis to disturb the trial court's finding.

■ Mid-American also argues that it should be awarded its costs on appeal. It has failed to cite relevant authority on this point, and in any event, an award of costs would be inappropriate in light of our determination above. Thus, Mid-American's request must fail.

For the foregoing reasons, the judgment of the circuit court denying Mid-American's request for attorney fees is affirmed. The judg-

ment against the Kaulases on the citation petition is reversed, and this cause is remanded for proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

CAHILL and O'BRIEN, JJ., concur.