## In re SEGNO COMMUNICATIONS, INC.

### No. 01 B 15427.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 11, 2001.

Donald A. Tarkington, Shelby L. Drury, Novack and Macey, Chicago, IL, Suzette E. Bewley, Baker & Daniels, Indianapolis, IN, for Movant or Plaintiff.

R. Scott Alserda, Ungaretti & Harris, Chicago, IL, for Respondent or Defendant.

### MEMORANDUM OPINION ON DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION

JACK B. SCHMETTERER, Bankruptcy Judge.

Segno Communications, Inc. ("Segno") moved to dismiss an involuntary Chapter 7 Petition initially filed herein by creditors Motorola, Inc., Tessco, Inc., and Mr. Wil-

liam Clinton Richardson ("Creditors"). Segno argued that Illinois is not the proper venue for Creditors to file their Petition because Segno's principal place of business was in Indianapolis, Indiana, and its operations in Illinois were terminated prior to the company being administratively dissolved by the Illinois Secretary of State on November 1, 2000. For reasons discussed below, Segno's motion was denied by order entered May 30, 2001, since Illinois is a proper venue for Creditors' involuntary Chapter 7 Petition.

## JURISDICTION

Subject matter jurisdiction is provided under 28 U.S.C. § 1334(b). Core jurisdiction lies under 28 U.S.C. § 157(b)(2)(A); the matter is referred here under Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

## UNDISPUTED FACTS AND BACKGROUND

In addition to considering undenied pleadings, various testimony was taken and stipulations stated by counsel that eliminated all fact issues. Segno, formerly known as Tri Management, Inc., was incorporated in Illinois and had its principal offices in Champaign, Illinois, until July 1998 when the company headquarters was moved to Indianapolis, Indiana. After relocating its headquarters to Indiana, the company continued to operate eight service centers throughout Illinois where it sold and serviced two-way radios. In the Summer of 2000, Segno began to experience financial difficulties, which prompted it to terminate some of its Illinois employees. The company also sought to restructure its obligations to its creditors. However (according to Segno), the restructuring failed because Motorola, Inc. refused to go along with the restructuring plan, and Segno was forced to close its remaining Illinois service centers in October of 2000. The company was administratively dissolved by the Illinois Secretary of State on November 1, 2000, only six months before this bankruptcy case was filed. When the motion to dismiss was heard, Segno had no property (except one "wrecked" vehicle) and employed no employees within Illinois.

Creditors filed their involuntary Chapter 7 Bankruptcy Petition against Segno on April 30, 2001. Segno responded by moving to dismiss, asserting several objections to the Involuntary Petition: (1) It argued that venue was improper in Illinois because Segno's principal place of business is in Indiana, (2) as a dissolved corporation Segno had no domicile or residence in Illinois; and (3) William Clinton Richardson was an unqualified creditor, and therefore the Creditors lacked a sufficient number of creditors to bring an involuntary petition under 11 U.S.C. § 303(b)(1). Creditors responded that the challenge to sufficiency of the number of creditors was moot because two additional creditors with noncontingent claims joined the original petitioners on May 24, 2001, and contested the assertion that Segno's principal place of business was in Indiana. Creditors further argued that Segno's dissolution notwithstanding, it is still subject to suit in Illinois for a period of five years after dissolution under Illinois law, and therefore subject to an involuntary bankruptcy filed here.

A hearing was held on Segno's motion for dismissal. At the hearing, in the light of more creditors joining the original Creditors, Segno dropped its assertion that there was an insufficient number of creditors and stipulated that it was not paying it debts on time so that the requirements of 11 U.S.C. § 303(b)(1) had been met. However, Segno maintained its ob-

jection to venue in Illinois. To buttress its contention that Creditors' petition should be dismissed for improper venue, Segno presented Mark R. Westermeier, Segno's current President, to testify that Segno currently occupies an office in Indianapolis, Indiana, from which it directs its business operations. On cross-examination, Westermeier further testified that the company continued to take in monthly revenues from the licensing of its mobile communication bandwidth in Illinois. He also testified that Segno was awaiting Federal Communication Corporation ("FCC") approval for sale of its frequency bandwidth for approximately $500,000. Segno, through its counsel, stated that these transactions were necessary for the wind-up of its business.

From evidence taken, it was clear (and conceded by Creditors' counsel) that Segno's principal place of business lies in Indiana.

## DISCUSSION

Segno objects that Illinois is not the proper venue for Creditors' petition because: (1) under 28 U.S.C. § 1408(1) venue for cases involving corporate debtors must be determined only by looking at the debtor's principal place of business, and Segno's principal place of business lies outside of Illinois; and (2) even assuming that domicile can be a basis for venue, Illinois is still an improper venue in this case because Segno, as a dissolved corporation, is not domiciled in Illinois or anywhere else.

### 28 U.S.C. § 1408(1)

Under 28 U.S.C. § 1408(1), a case under the Bankruptcy Code may be commenced in any district:

(1) in which the *domicile,* residence, *principal place of business in the United States,* or principal assets in the United States, *of the person or entity* that is the subject of such case have been locat-

ed for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408(1) (Emphasis supplied.)

 Section 1408(1) provides four alternative bases for venue: domicile, residence, principal place of business, and the location of the debtor's principal assets in the United States. *In re Frame,* 120 B.R. 718, 722 (Bankr.S.D.N.Y.1990). Given that those four tests are stated in the alternative, any of the four is jurisdictionally sufficient. *In re Broady,* 247 B.R. 470, 472 (8th Cir. BAP 2000). "By providing four alternative bases for proper venue, the statute allows many possible locations where an entity or individual may file for bankruptcy protection." *Id.* Section 1408(1) combines the test for venue under former Bankruptcy Rule 116, which had separate provisions for individual and organizational debtors. 1 Lawrence P. King et al., *Collier on Bankruptcy,* ¶ 4.01[2][a] (Matthew Bender 15th Ed. Revised 2000). Under that former Rule, the proper venue for individuals was the district where the debtor had his principal place of business, residence, or domicile, while the proper venue for a corporation or partnership was the location of its principal place of business or principal assets. *Id.*

 The breadth of Section 1408(1) is shown by the use of the words "person" and "entity" in the statute. The term "person" is defined at 101(41) of the Bankruptcy Code to include individuals and cor-

porations. 11 U.S.C. § 101(41). The term "entity," which is defined at 101(15) was intended under the Code to be the most "inclusive" of the various defined terms. 11 U.S.C. § 101(15); *Collier, supra,* at ¶ 4.01[1]. Taken together, these terms include all entities who might be the subject of a case under the Code. *Id.* Thus, Section 1408(1) treats individual and non-individual debtors exactly the same for the purpose of determining proper venue in which to bring a case under Title 11 U.S.C. *Id.* Therefore, the "domicile" of corporate debtors may be a proper venue for a case under the Code. 28 U.S.C. § 1408(1). To determine the domicile of a corporation we look to the state of its incorporation. *In re FRG Inc.,* 107 B.R. 461, 471 (Bankr. S.D.N.Y.1989) (citing *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 226, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957)).

Despite the foregoing authority for finding corporate domicile for proper venue, Segno contends that an opinion by a panel of the Seventh Circuit Court of Appeals has limited the test for proper venue to the principal place of business where the debtor is a corporation. Segno argues that this is the import of *In re Peachtree Lane Associates,* 150 F.3d 788 (7th Cir.1998). In *Peachtree,* the debtor was a limited partnership which filed a voluntary Chapter 11 petition in the Northern District of Illinois. The debtor's single asset was a housing complex located in Texas, which was the subject of debtor's adversary complaint against an adjacent landowner that the debtor claimed was encroaching on its property. The Defendants responded by filing counterclaims against Peachtree and a trial was held in bankruptcy court. The court ruled in favor of Peachtree and defendants appealed on grounds that the Northern District of Illinois was not the proper venue because Peachtree did not maintain its principal place of business or

principal asset in that district. *Peachtree,* 150 F.3d at 789–90. On appeal, the opinion stated that: "it is difficult to see how a partnership can be said to have a residence or domicile," *Id.* at 792, and therefore discarded "domicile" as a possible basis for venue involving a partnership. After reviewing the record, the court concluded, however, that Chicago was the "nerve center" for Peachtree's operations because it was where all the important decisions were made. Therefore, Illinois was held to be a proper venue for the case since that state rather than Texas was the location of Peachtree's principal place of business. *Peachtree,* 150 F.3d at 796.

*Peachtree* did not thereby establish a rule that domicile is irrelevant to the test for proper venue of cases involving corporate debtors; rather, domicile was not even considered by the *Peachtree* opinion because it was not relevant to a partnership debtor. *Peachtree* went on to hold that a debtor's principal place of business is the place where its most influential decisions are made and not the location of its principal assets. In the present case, based on evidence presented Segno's principal place of business is in Indiana. But the remaining issue here is whether venue is proper in this district because Illinois is the location of Segno's "domicile."

Segno argues that the reasoning in *Peachtree* can be extended to corporate debtors because corporations and partnerships are both formal organizations under state law. However, in light of the broad wording in § 1408(1), Segno is certainly an "entity" intended to be covered, and the effort to stretch *Peachtree* to eliminate corporate "domicile" has no merit. Cases relied on by Segno held contrary to § 1408(1) that domicile is not a valid test for proper venue for corporate debtors. *See In re Industrial Pollution Control,*

*Inc.*, 137 B.R. 176, 180 (Bankr.W.D.Pa. 1992) (citing *In re Suzanne de Lyon, Inc.* without any analysis); *In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 866 (Bankr. S.D.N.Y.1991) (citing no authority for assertion that "Domicile and residence generally apply to individuals and not corporations.").

### The Impact of Segno's Dissolution on the Involuntary Petition

Segno argues alternatively that even if domicile is a possible basis for corporate venue, its motion should still prevail because it cannot be domiciled in Illinois because as a dissolved corporation it has no domicile.

 Whether Segno is subject to an involuntary bankruptcy petition in Illinois depends on state law. "The state of Illinois has the power of life or death over its corporations." *In re Peer Manor*, 134 F.2d 839, 841 (7th Cir.1943). Once state law says that the corporation is dead, "We know of no rule of bankruptcy which has the power of resurrection." *Id.* Local law controls because corporations are creatures of state law. *Matter of Quad City Minority Broadcasters, Inc.*, 252 B.R. 773, 775 (Bankr.S.D.Iowa 2000) (quoting *Chicago Title & Trust Co. v. Forty–One Thirty–Six Wilcox Bldg. Corp.*, 302 U.S. 120, 125, 58 S.Ct. 125, 82 L.Ed. 147 (1937)). "Thus, if the result of dissolution is an end to the existence of the corporation, it 'may be likened to the death of a natural person. There must be some statutory authority for the prolongation of its life, even for litigation purposes'." *Id.*

Thus, our analysis is guided by applicable Illinois corporate law which provides:

*5/12.30. Effect of dissolution*

> § 12.30. Effect of dissolution. (a) Dissolution of a corporation terminates its corporate existence and a dissolved corporation shall not there-

after carry on any business except that necessary to wind up and liquidate its business and affairs, including:

(1) Collecting its assets;

(2) Disposing of its assets that will not be distributed in kind to its shareholders;

(3) Giving notice in accordance with Section 12.75 and discharging or making provision for discharging its liabilities;

(4) Distributing its remaining assets among its shareholders according to their interests; and

(5) Doing such other acts as are necessary to wind up and liquidate its business and affairs.

(b) After dissolution, a corporation may transfer good and merchantable title to its assets as authorized by its board of directors or in accordance with its by-laws.

(c) Dissolution of a corporation does not:

(1) Transfer title to the corporation's assets;

(2) Prevent transfer of its shares or securities, provided, however, the authorization to dissolve may provide for closing the corporation's share transfer books;

(3) Effect any change in the by-laws of the corporation or otherwise affect the regulation of the affairs of the corporation except that all action shall be directed to winding up the business and affairs of the corporation;

(4) Prevent suit by or against the corporation in its corporate name;

(5) Abate or suspend a criminal, civil or any other proceeding pending by or

against the corporation on the effective date of dissolution.

805 Ill. Comp. Stat. § 5/12.30

*5/12.80. Survival of remedy after dissolution*

§ 12.80. Survival of remedy after dissolution. The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by a judgment of dissolution by a circuit court of this State, or (3) by expiration of its period of duration, shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name.

805 Ill. Comp. Stat. § 5/12.80

The foregoing statutory language must be given its plain and ordinary meaning. *Mid American Elevator Co., Inc.*, 287 Ill.App.3d 582, 223 Ill.Dec. 202, 679 N.E.2d 387, 391 (1997), and must be read as a whole with all its material aspects considered together. *Id.* When read together the foregoing Illinois statutes continue the existence of a dissolved corporation for a period of five years after it is dissolved, so that the corporation can wind-up its affairs. *In re Morris*, 171 B.R. 999, 1004 (S.D.Ill.1993) ("corporate survival statutes, by their very nature, are intended to continue the existence of a corporation for purposes of winding up corporate affairs"); *Treager v. Totsch et al*, 322 Ill.App. 75, 53 N.E.2d 719 (1944) ("Upon dissolution of a corporation, no matter how the dissolution may be effected, the corporation is regarded as still existing for the

purpose of settling up its affairs"). During the wind-up period, the corporation continues to have title to its assets( 805 ILCS § 5/12.30(c)(1)), has the power to give title to its assets(805 ILCS § 5/12.30(b)), and the ability to sue or be sued. 805 ILCS § 5/12.30(c)(4); 805 ILCS § 5/12.80. The wind-up period is limited in Illinois to five years, after which the corporation ceases to exist. *Peer Manor*, 134 F.2d at 841 (interpreting earlier version of statute and stating that corporation's existence was limited to two years provided by statute). All corporate formalities must be observed during the wind-up period. Otherwise, the officers of the corporation are personally liable for *ultra vires* acts. *Mid–American*, 223 Ill.Dec. 202, 679 N.E.2d at 392. Thus, the rights of creditors must be protected, and officers of the corporation cannot manipulate the dissolution to disadvantage creditors and shareholders. *Id.* Finally, the priority interest of creditors in the corporation's assets continues after dissolution. *In re Wojcicki*, No. 97 B 24008, 97 A 01286, 1997 WL 742513 (Bankr.N.D.Ill.1997).

Therefore, under Illinois law, a dissolved corporation continues its existence for five years during which its activity is restricted to winding-up its affairs. Can a dissolved corporation be forced to wind-up in bankruptcy? Opinions from the Seventh Circuit Court of Appeals have addressed whether a dissolved corporation can become a debtor, either voluntarily or involuntarily, in bankruptcy. Two cases have held that a dissolved corporation could be forced into bankruptcy and that a dissolved corporation could voluntarily file for bankruptcy, respectively (even though in both cases the bankruptcy petitions were filed after the two-year wind-up period allowed by Illinois law at the time). *Chicago Title & Trust Co. v. Forty–One Thirty–Six Wilcox Bldg. Corp. (In re For-*

*ty–One Thirty–Six Wilcox Bldg. Corp.),* 86 F.2d 667 (7th Cir.1936); *In re 211 East Delaware Place Bldg. Corp. (Kampel v. Whittemore),* 76 F.2d 834 (7th Cir.1935). However, *In re Forty–One Thirty–Six Wilcox* was overruled by the Supreme Court in the seminal case of *Chicago Title & Trust Co. v. Forty-One Thirty–Six Wilcox Bldg. Corp.,* 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937). In *Chicago Title,* the Supreme Court held that a corporation which had been dissolved for more than two years (the wind-up period was two years at that time) could not seek relief under the Bankruptcy Act. *Id.* at 129, 58 S.Ct. 125. However, the Supreme Court passed on deciding the validity of *In re 211,* which involved an involuntary bankruptcy petition. *Id.* at 127, 58 S.Ct. 125.

A panel of the Seventh Circuit later reiterated the holding in *In re 211* in holding that a "the dissolution of the corporation did not rob creditors of their right to invoke liquidation or reorganization administration in bankruptcy." *Pancoe v. Southman (In re Park Beach Hotel Bldg. Corp.),* 96 F.2d 886, 892 (7th Cir.1938). The Court distinguished *Chicago Title* as being limited to a voluntary petition filed by a dissolved corporation after the expiration of the wind-up period. *Id.* A Seventh Circuit panel again visited the issue of dissolved corporations under the Act in *Witter v. Nikolas et al. (In re Peer Manor Bldg. Corp.),* 134 F.2d 839 (7th Cir.1943). In *Peer Manor,* the debtor corporation was apparently unaware that it had been administratively dissolved by the Secretary of State more than two years prior to the debtor filing for a reorganization under the Act. *Id.* at 839. The bankruptcy court which was also unaware that the company had been dissolved confirmed a plan for the debtor and closed the case. *Id.* Five years later, more than seven years after dissolution, the creditors of the debtor sought to have a new plan confirmed after the debtor defaulted on the original plan. *Id.* One of the creditors objected to the second bankruptcy on the grounds that the corporation was dissolved. *Id.* at 840. However, the bankruptcy court had refused to consider evidence that the debtor had been dissolved. *Id.* The Court of Appeals reversed. In *In re 211* and *In re Park Beach Hotel* creditors has been allowed to file involuntary petitions against a dissolved corporation after the state statutory wind-up period. But in *Peer Manor,* the opinion applied the reasoning of *Chicago Title* and concluded that a corporation ceases to exist after the two-year wind-up period, and therefore it had no capacity to be a debtor in bankruptcy. *See In re Peer Manor,* 143 F.2d 769 (7th Cir.1944). Thus, *Peer Manor* inferred that a dissolved corporation could be a debtor in bankruptcy provided the bankruptcy is filed within the statutorily prescribed wind-up period.

Opinions from other Circuits have upheld ability of a dissolved corporation to wind-up in bankruptcy. *In re C–TC 9th Avenue Partnership,* 113 F.3d 1304 (2d Cir.1997) (holding that dissolved corporation could not reorganize under Chapter 11 because its activity was restricted to wind-up); *In re Cedar Tide Corp.,* 859 F.2d 1127 (2d Cir.1988) (corporation dissolved by state could file a Chapter 11 case); *In re Martin–Trigona,* 760 F.2d 1334 (2d Cir.1985) (holding that a Connecticut corporation which had been administratively dissolved could wind-up in bankruptcy); *Mosaic Tile Co. v. Stabe Corp.,* 323 F.2d 274 (2d Cir.1963) (where Connecticut statute did not limit wind-up period, corporation still existed under Connecticut law and could file bankruptcy petition); *Old Fort Improvement Co. v. Lea,* 89 F.2d 286 (4th Cir.1937) (dissolved corporation retained capacity to reorganize).

 Furthermore, most bankruptcy courts in states with corporation laws like

that of Illinois have held that administratively dissolved corporations are eligible to be debtors in bankruptcy. *Quad City,* 252 B.R. at 778 (denying motion to dismiss involuntary Chapter 7 case because Iowa law continued the existence of dissolved corporation so that corporation could be debtor under bankruptcy); *In re Washington,* 154 B.R. 853, 859 n. 7 (Bankr.S.D.N.Y. 1993) (Chapter 11 partnership debtor's existence continued during its efforts to wind down affairs); *In re Donald Verona & Bernard Green,* 126 B.R. 113 (Bankr. M.D.Fla.1991) (". . . dissolution did not destroy the legal evidence of a partnership, and it will remain an eligible Chapter 7 debtor until its affairs are wound up"); *Matter of Tri–Angle Distributors,* 102 B.R. 151 (Bankr.N.D.Ind.1989) (under Indiana law dissolved corporation can wind-up in Chapter 7); *In re Wine Farms, Inc.,* 94 B.R. 410 (Bankr.W.D.Va.1988) (corporation voluntarily filed Chapter 11 petition after dissolution); *In re Vermont Fiberglass,* 38 B.R. 151 (Bankr.Vt.1984) (court refused to allow dissolved corporation to file a Chapter 11 because as dissolved corporation it could only wind-up, case was converted to Chapter 7); *In re Heark Corp.,* 18 B.R. 557 (Bankr.D.Md.1982) (Chapter 7 provides means for liquidating dissolved corporation); *In re Liberal Mack Sales Inc.,* 24 B.R. 707 (Bankr.D.Kan.1982) (under Kansas law dissolved corporation could be forced to wind-up in involuntary Chapter 7 bankruptcy); *In re S & T Terry Contractors, Inc.,* 6 B.R. 84 (Bankr.N.D.Ill.1980) (dissolved corporation could not reorganize under Chapter 11); *In re Rust Control, Inc.,* 1 B.R. 303 (Bankr.W.D.Va.1979) (dissolved corporation allowed to voluntarily wind-up in bankruptcy). The rule derived from these precedents is that an involuntary or voluntary Chapter 7 petition may be filed against or by a dissolved corporation while the dissolved corporation is still

in existence. *Liberal Mack,* 24 B.R. at 710.

■ That principle applies here. The case at bar is analogous to *Quad City* and *Liberal Mack* where the courts rejected the debtors argument that a dissolved corporation could not be forced to wind-up in bankruptcy. *Quad City,* 252 B.R. at 778; *Liberal Mack,* 24 B.R. 707. In both cases the courts found under applicable state law that a dissolved corporation continued its existence after dissolution and that it could be forced to wind-up in bankruptcy. Similarly, Illinois law provides that a dissolved corporation continues its existence during the five-year wind-up period. 805 ILCS § 5/12.30; 805 ILCS § 5/12.80. Therefore, under Illinois law, during the five-year wind-up period, a dissolved corporation can file a bankruptcy petition or have one filed against it. Segno contends that this case is distinguishable from *Quad City* because the Iowa statute expressly stated that a dissolved corporation continues to exists whereas the Illinois statute states that dissolution "terminates" the existence of a corporation. However, both of those laws provide that the dissolved corporation continues to be able to own property, transfer title to property, sue or be sued, and that all corporate by-laws remain in effect. When the statutes are each read as a whole and the plain meaning is given to each, it is obvious that both statutes are intended to continue the existence of a dissolved corporation so that it may wind-up its affairs. Section § 12.30(c)(3) of the Illinois corporation statute states that dissolution does not "effect any change in the by-laws of the corporation or otherwise effect the regulation of the affairs of the corporation except that all action shall be directed to winding up the business and affairs of the corporation." 805 ILCS § 5/12.30(c)(3).

The only significant difference between the Iowa statute applied in *Quad City* and the Illinois statute applicable here is that the former had an indefinite wind-up period whereas the Illinois statute limits wind-up to five years. 805 ILCS § 5/12.80. However, this distinction is not material to our analysis because Creditors filed their involuntary bankruptcy petition within six months of Segno's dissolution, well within the prescribed wind-up period. Thus, the present case is distinguishable from cases where petitioning creditors tardily filed their involuntary bankruptcy petition. (*Cf. Peer Manor*, 134 F.2d 839).

 Segno's brief also devotes considerable argument to the fact that neither the cases cited by Creditors nor the civil remedy statute (which allows civil suits by or against a dissolved corporation during the five-year wind-up period) determine the venue in which an involuntary wind-up action may be brought. However, Section 1408 of Title 28 U.S.C. fixes venue in the context of a bankruptcy proceeding, and that statute shows Congress' intent to provide broad flexibility in the choices for proper venue. Moreover, Illinois does not have a special venue provision for dissolved corporations; rather, the general venue provisions apply to dissolved corporations. 735 Ill. Comp. Stat. 5/2 §§ 101–03 (West 2001). Thus, the lack of any special provision for dissolved corporations militates against Segno's claim that such corporations cease to exist upon dissolution and that federal law does not fix venue.

Finally, there are strong reasons in furtherance of the Bankruptcy Code why Segno should not be allowed to use its dissolution to shield it from being forced to wind-up in bankruptcy. Segno has admitted that it is not presently paying its bills as they become due. It also acknowledged currently being in the process of selling its last remaining asset for more than $500,000, and that the company is currently collecting payments of approximately $8,000 a month from leasing agreements with its customers. By allowing Creditors to force Segno to wind-up in bankruptcy, Creditors will have the best chance of assuring that they maximize the return that they receive with minimal delay and cost, and that priorities in bankruptcy will be observed. This is what Congress intended when it enacted § 303 of the Bankruptcy Code and allowed corporations to be subject to involuntary bankruptcy petitions. Conversely, if corporations could avoid bankruptcy by obtaining dissolution from the state because of non-payment of franchise fees and using state administrative dissolution proceedings to bar involuntary bankruptcy petitions, the result would seriously threaten creditor protections in bankruptcy. If that tactic were recognized, a corporation could easily seek reinstatement after dissolution once the threat of bankruptcy passed. A dissolution followed by reinstatement could become standard procedure for corporate management seeking to evade bankruptcy. Such a result and tactic would undermine the fundamental protections that the Bankruptcy Code provides to creditors.

## CONCLUSION

 For the foregoing reasons, Segno was and is found to be domiciled in the state of Illinois, and pursuant to 28 U.S.C. § 1408(1) the Northern District of Illinois was and is a proper venue for Creditors' involuntary Chapter 7 petition. Therefore, Segno's motion to dismiss the Creditor's involuntary Bankruptcy Petition against it was earlier denied.