**Marvin GORDEN, Plaintiff–Appellant,**

v.

**Keith KREUL, Mark L. Mulder, and Ernie Peterson, Defendants–Appellees.**

No. 95–3121.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1996.

Decided Feb. 21, 1996.

Matthew A. Biegert (argued), Doar, Drill & Skow, New Richmond, WI, for Plaintiff–Appellant.

Steven Pray O'Connor (argued), Office of United States Attorney, Madison, WI, for Defendants–Appellees.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Marvin Gorden borrowed from the United States under a farm price support program. The Commodity Credit Corporation (CCC), a part of the Department of Agriculture, advanced the money; the Consolidated Farms Service Agency (CFSA), another component of that Department, administered the loans. Gorden pledged corn as security for repayment. Actually, the notes call for repayment *in* corn. This is how the program supports the price of agricultural products: if the market price of the commodity drops, farmers can repay in the commodity just as if the price had remained at the level the government prefers, and competition in the market to buy the commodity (to use in payment of loans) prevents the price from falling below that level. But the note also allows payment in several other ways; and if the price of the commodity rises, the farmer will sell the crop in the market and pay off the loan in cash. As with any other loan, the creditor bears a risk of nonpayment, and these loans were secured by the corn to reduce that risk.

Our case arises out of the security features of the loans, which in this respect were standard commercial transactions. Gorden signed contracts containing usual provisions for secured transactions covered by Article 9 of the Uniform Commercial Code. Paragraph 7 of each contract provides:

> [I]f, upon maturity of the note, the loan indebtedness (i.e., the unpaid amount of the loan, charges, and interest) is not satisfied by payment of the amount thereof or

by the delivery of an eligible commodity pursuant to the provisions of the note, the producer authorizes CCC, or its agent, to the extent permitted by law, to enter on the premises and remove the collateral commodity. . . .

In September and October of 1989, notes for 159,952 bushels of corn came due. Gorden did not deliver corn, although he did tender commodity certificates and a personal check for about 17% of the debt. Gorden also purported to revoke the CCC's power to enter his farm to seize the crop in satisfaction of the balance. Having fulfilled its part of the bargain, the Department of Agriculture was not impressed—or dissuaded—by Gorden's effort to renege. The CFSA hired Ernie Peterson and his firm Cashton Farm Supply to go get the corn, which Peterson did. Between November 20 and 22, 1989, Peterson hauled 20,876 bushels of corn from Gorden's farm in Wisconsin. To halt the removal, Gorden filed a bankruptcy petition and asked the bankruptcy judge to forbid further seizures. The judge declined, but during a lull (removal paused while the bankruptcy judge had the request under advisement) Gorden had the corn storage shed locked. Peterson then desisted—for a secured creditor may seize collateral only when "this can be done without breach of the peace" (UCC § 9–503, enacted in Wisconsin as Wis.Stat. § 409.503), and breaking the lock would breach the peace.

According to Gorden, even Peterson's limited success in removing collateral breached the peace, because in order to get access to the corn Peterson had to remove a bulkhead, which was destroyed. Gorden says that the structure of the corn shed suffered injury in the process. Peterson replies that this occurs in any movement of corn, and that § 9–503 permits a creditor to do the same sort of things the debtor would do in the process of making a regular commercial delivery. Which position is correct is an issue that could be resolved by litigation under the UCC—which, given *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), supplies the rule of law even though the creditor is the national government. See also *O'Melveny & Myers v. FDIC*, —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). But that is not the nature of this suit. Gorden sued Peterson and two employees of the CFSA directly under the Constitution of the United States, see *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), contending that Peterson's activities (at the direction of the two other defendants, and with their assistance) violated the fourth and fifth amendments. All three defendants responded that both ¶ 7 of the contract and the UCC authorized the entry and seizure of collateral, to which Gorden replied that Peterson's methods exceeded the contractual and statutory authorization and therefore violated the Constitution.

Relying on *Hollibush v. Ford Motor Credit Co.*, 179 Wis.2d 799, 508 N.W.2d 449 (Wis. App.1993), the district judge concluded that the repossession did not breach the peace and therefore did not violate the Constitution. He granted summary judgment to the defendants. Gorden's principal argument on appeal is that structural damage (a subject not considered in *Hollibush* ) breaches the peace and therefore violates the Constitution. Citing UCC cases from New York and Georgia, defendants deny the first part of this proposition and believe that they have thereby defeated the second. For our part, we do not see the link. Why does exceeding the scope of repossession rights under § 9–503 violate the Constitution of the United States? Over and over, the Supreme Court says that the Constitution does not require adherence to state law, and that to exceed the powers granted by statute is not to offend against the Constitution. E.g., *Gilmore v. Taylor*, 508 U.S. 333, 340–46, 113 S.Ct. 2112, 2117–19, 124 L.Ed.2d 306 (1993); *Nordlinger v. Hahn*, 505 U.S. 1, 16 n. 8, 112 S.Ct. 2326, 2335 n. 8, 120 L.Ed.2d 1 (1992); *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 202, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989); see also *Archie v. Racine*, 847 F.2d 1211, 1215–18 (7th Cir.1988) (en banc). There is a substantial difference between breach of contract and breach of society's most fundamental compact. E.g., *Mid–American Waste Systems, Inc. v. Gary*, 49 F.3d 286, 289–91 (7th Cir.1995). If the law *could* authorize the steps Peterson took,

then there is no constitutional problem whether or not the law *did* authorize them.

■ Deeper problems with this case prevent us from elaborating on that theme. For Gorden does not rely on any federal statute creating a private right of action. Instead he invokes *Bivens.* But, as the Supreme Court is fond of observing, *Bivens* is a fallback for those who lack other remedies. People must use remedial systems designed for their claims and may not appeal to what is effectively a system of federal constitutional common law in an effort to bypass the express remedies or sidestep limitations deliberately crafted. See, e.g., *FDIC v. Meyer,* —— U.S. ——, —— – ——, 114 S.Ct. 996, 1005–06, 127 L.Ed.2d 308 (1994); *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). With respect to grievances concerning the way the United States collects debts, both the opportunities and the limitations are plentiful. The CFSA has a system of administrative relief. 7 C.F.R. Part 792; see also 7 C.F.R. Part 780. There are ways to stave off collection (including seizure) and ways to set things to rights if errors occur. But these remedies are available only to persons who file appropriate claims, which Gorden did not. On the judicial side, remedies come with both substantive and procedural limitations. If the seizure was tortious, then Gorden had to file an appropriate claim with the agency within two years. 28 U.S.C. § 2401(b). He did not. If, on the other hand, wrongful seizure of collateral is a breach of contract—with the terms of the UCC used to fill contractual lacunae—then Gorden's initial obstacle is the Tucker Act, which requires contract claims exceeding $10,000 to be presented to the Court of Federal Claims rather than to the district courts. 28 U.S.C. § 1346(a)(2). *Bivens* does not authorize courts to disregard these limitations. Quite the contrary, the status of the Tucker Act as a limitation on the jurisdiction of the district courts means that we must ensure that *Bivens* actions are confined to their proper scope—must do this even when the United States is content to litigate in the district court, as it was in this case.

■ *Kimbell Foods* concludes that state law governs efforts by the federal government to collect debts that arise from federal loan programs. Unless a federal statute or regulation supplies a rule of law for the occasion, the court applies the same rules of state law that govern debtor-creditor relations. See also *United States v. Einum,* 992 F.2d 761 (7th Cir.1993). The Court held in *Kimbell Foods* that, in their roles as creditors, the Small Business Administration and the Farmers Home Administration had no rights exceeding those of private lenders. *O'Melveny & Myers* reiterated this theme. State law works both ways: the UCC governs secured creditors' rights against debtors, and debtors' rights against secured creditors. To say, as *Kimbell Foods* and *O'Melveny & Myers* do, that federal creditors presumptively have the same rights under state law as do private creditors is to say that they also have the same obligations and limitations. If the federal agency, as creditor, oversteps its rights in seizing collateral, it is answerable under the UCC, which means under the contract, in the Court of Federal Claims. (If the damages are less than $10,000, the district court has jurisdiction under 28 U.S.C. § 1346(a)(1).) Any attempt to super-impose *Bivens* suits on the framework created by the UCC, on the theory that to exceed the UCC's authorization is to violate the Constitution, would disrupt the contractual and statutory specification of remedies. *Schweiker v. Chilicky* and *Bush v. Lucas* tell us that this is not the function of *Bivens.*

No other court has considered whether the theory of *Kimbell Foods,* and the availability of remedies under contract law and the UCC, displaces *Bivens* claims in federal debt-collection cases. We held in *Cameron v. IRS,* 773 F.2d 126, 129 (7th Cir.1985), that the administrative and judicial systems regulating the collection of tax debts are inconsistent with and displace *Bivens* suits against tax collectors. Our case is not quite the same, because the tax-collection system is governed entirely by federal law, but the principle—that *Bivens* cannot be used to bypass the remedies designed for debt collec-

tion—had general application. Of other cases, the closest is *Arcoren v. Peters*, 829 F.2d 671 (8th Cir.1987) (en banc), which held that in light of *Kimbell Foods* agents of the Farmers Home Administration have qualified immunity in a *Bivens* action seeking damages for wrongful seizure of collateral. The eighth circuit did not ask whether a *Bivens* action was proper in the first place. It did note, however, that violations of the contract or the UCC cannot support relief under the approach of *Bivens*. 829 F.2d at 676–77.

We take the next step and hold that errors in the collection of debts due to federal agencies must be addressed through the statutes, regulations, and contracts that specify the parties' rights. Any action proper under the debt contract (including the provisions of the UCC that govern secured transactions) is constitutionally unobjectionable; the debtor consented. Any action that violates the Constitution also will lead to a remedy under these bodies of law, though probably in a bankruptcy court or the Court of Federal Claims rather than in the district court. At oral argument, Gorden's counsel candidly conceded that he filed this *Bivens* action to avoid the restrictions (especially the time limits) that accompany these other remedies. That is not a proper use of the *Bivens* device. The judgment of the district court accordingly is vacated, and the case is remanded with instructions to dismiss for want of jurisdiction.