No. 3--00--0342

February 20, 2001_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

GARY MATTHEWS, ) Appeal from the Circuit Court

Plaintiff-Appellant, ) for the 10th Judicial Circuit,

) Peoria County, Illinois

v. ) 

) No. 96--LM--2628

CLAIRE L. SERAFIN and CLAIRE ) 

WIEGAND, as Trustees of the ) Honorable

Mitchell C. Serafin Trust; ) John A. Barra

PIERRE SERAFIN, as Special ) Judge, Presiding

Adm’r for Mitchell C. Serafin;
) 

and CLAIRE SERAFIN, as Ex’r )

of the Estate of Mitchell C. )

Serafin, Deceased. )

Defendants-Appellees. )

_________________________________________________________________

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

Plaintiff Gary Matthews brought this action claiming that Mitchell Serafin, deceased, unlawfully transferred 
his entire estate into a revokable trust to avoid paying a judgment.  The action was filed against the trustees of Serafin’s trust and the executors of his estate 
(collectively trustees).  
During a bench trial, t
he court entered an order at the close of Matthews’ case directing a verdict in favor of the trustees.  We affirm and hold that a debtor does not violate the Illinois Uniform Fraudulent Transfer Act (Transfer Act) (740 ILCS 160/1 
et
 
seq.
 (West 1998)) when he transfers his estate into a revocable trust so long as he is not made insolvent and does not act to defraud a creditor.

FACTS

In 1987, Northpoint, Inc. (Northpoint), leased property from Matthews located at 1500 North East Jefferson Street, Peoria, Illinois.  Serafin, president of Northpoint, personally guaranteed Northpoint’s obligation.  The lease was to expire in the fall of 1990 but was extended to February of 1995 per an option agreement in the lease.  
The agreement extending the lease was not guaranteed by Serafin.

In January of 1992, Serafin signed a revokable trust agreement naming himself as trustee.  The agreement transferred certain stock and a promissory note made by UFS Savings Center, Inc. (Savings Center), into the trust.  The agreement provided that Serafin was to receive income from the trust in "quarterly or other convenient installments" but no less than once a year.

In the fall of that same year, Northpoint vacated the Peoria property, discontinued paying rent, and filed a declaratory judgment action against Matthews claiming it was constructively evicted.  Matthews, in turn, filed an action against Serafin and Northpoint to determine the right to possession of the property and to collect the unpaid rent.  The trial court gave Matthews possession of the property but reserved decision on the issues of unpaid rent and constructive eviction.

In December of 1992, Serafin transferred additional property into the trust.  The property included his investments in Northpoint and Savings Center as well as his "clothing, jewelry, automobiles, household goods, provisions, furniture, furnishings and equipment and all interests in real estate."  For four months the trust paid Serafin $5,200 a month until he died in May of 1993.  Upon his death, the trust’s assets were valued at $973,854 the majority of which remained in trust
 for Serafin’s wife and daughter.  

Several years after Serafin’s death, the trial court found in favor of Matthews and against Serafin’s estate regarding the issues of unpaid rent and constructive eviction.  
The court awarded Matthews $33,119.76, representing $6,300 for past rent and $26,819.76 for attorney fees and costs.  The record provides no information regarding whether Matthews made a demand to the trustees to pay the judgment or whether the trustees refused to pay.  Nevertheless, Matthews filed this action three months later to set aside Serafin’s last transfer into his trust, claiming Serafin fraudulently transferred all his assets into the trust to avoid paying the judgment in violation of sections 6(a), 5(a)(1) and 5(a)(2) of
 the Transfer Act 
(740 ILCS 160/6(a), 5(a)(1), (a)(2) (West 1998)). 

At the close of Matthews’ case, the trustees made a motion for a directed verdict, which is governed by section 2-110 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1110 (West 1998)).  The trial court granted the motion, finding that Matthews failed to prove that Serafin was insolvent or that he became insolvent as a result of the transfer.  The trial court’s decision was based solely on section 6(a) of the Transfer Act.  
Shortly thereafter, Matthews filed a motion to reconsider his claim under sections 5(a)(1) and (a)(2) of the Transfer Act.  The motion was denied and 
this appeal followed.

ANALYSIS

On appeal, Matthews disputes the trial court’s determination that he failed to prove 
Serafin 
fraudulently transferred assets in violation of the Transfer Act
.  
When a trial court examines the weight of the evidence at the close of a plaintiff’s case, the court’s determination will not be overturned unless it is against the manifest weight of the evidence.  
Evans v. Gurnee Inns, Inc.
, 268 Ill. App. 3d 1098, 645 N.E.2d 556 (1994).

Matthews first argues the trial court erred when it determined that he failed to establish Serafin was insolvent as required by section 6(a) of the Transfer Act.  
Section 6(a) 
states 
that "[a] transfer made or obligation incurred by a debtor is fraudulent *** if the debtor made the transfer *** without receiving a reasonably equivalent value in exchange for the transfer *** and the debtor was insolvent at that time or *** became insolvent as a result of the transfer or obligation."  740 ILCS 160/6(a) (West 1998).

After careful review of the record, we cannot say that the trial court’s conclusion that Matthews failed to prove Serafin was insolvent was against the manifest weight of the evidence.  No evidence was presented establishing that Serafin was not paying 
his debts as they became due, either before or after the transfer of assets to the trust.  
Serafin received $5,200-per-month income from the trust, and 
if this judgment had issued during his lifetime he could have paid it from these funds.  Moreover, no evidence was presented that after Serafin’s death and after the judgment was entered his estate could not pay the judgment.   In fact, the record fails to indicate whether Matthews ever made a demand to the trustees or whether they refused to pay.  Accordingly, we affirm the trial court’s holding that Matthews failed to prove that Serafin was insolvent as required by section 6(a) of the Transfer Act.

Matthews argues that Serafin also violated section 5(a)(1) of the Transfer Act.  Section 5(a)(1) 
establishes that a transfer by a debtor is fraudulent to a creditor if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor" either before or after the creditor’s claim arose.  740 ILCS 160/5(a)(1) (West 1998).

With respect to "actual intent," section 5(b) sets forth a nonexclusive list of factors the court may consider, including whether:

"(1) the transfer or obligation was to an insider; 

(2) the debtor retained possession or control of the property transferred after the transfer; 

(3) the transfer or obligation was disclosed or

concealed; 

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; 

(5) the transfer was of substantially all of the debtor’s assets; 

*** 

(7) the debtor removed or concealed assets; 

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; 

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly

after a substantial debt was incurred."  740 ILCS 160/5(b) (West 1998).

The presence of these factors does not create a presumption of actual intent but, rather, is an indicator of such intent on which the trial court may rely to make its findings based on the evidence presented by the parties.  
Lindholm v. Holtz
, 221 Ill. App. 3d 330, 581 N.E.2d 860 (1991).

According to Matthews, the trust was Serafin’s "insider" as it was created and funded by him with a right to retain income.  He kept possession and control of the property, only switching the capacity in which he was managing the assets.  Matthews claims that Serafin concealed the trust, placed all his property into it only when he was threatened with suit, and became insolvent as a result.

Matthews’ position is untenable.  He provides no case law, and we find none in existence, to support his position that a trust may personify an "insider."  While 
Serafin transferred much of his property into the trust shortly after this action was filed, the trust was created almost a year prior to the time Northpoint stopped paying rent.  There is no evidence that Serafin concealed the trust or any of his other assets.  As noted, Serafin was not insolvent and the judgment debt was not incurred until several years after the transfer.  
Even if the judgment was entered during Serafin’s lifetime, these facts do not support Matthews’ position that Serafin intended to 
hinder, delay, or defraud him.  As a result, we cannot conclude that the trial court’s decision was against the manifest weight of the evidence.

Finally, Matthews argues that Serafin violated section 5(a)(2) of the Transfer Act.  Section 5(a)(2) 
provides that a transfer by a debtor is fraudulent as to a creditor if the debtor made the transfer "without receiving a reasonable equivalent value in exchange for the transfer," and the debtor was engaged in a business for which the remaining assets of the debtor were unreasonably small in relation to the business, or the debtor believed he would incur debts beyond his ability to pay as they became due.  740 ILCS 160/5(a)(2) (West 1998).

Matthews asserts Serafin did not receive any value for his transfer.  He was "engaged in a business" by acting as guarantor and his remaining assets were unreasonably small in relation to the debt owned to Matthews.  In addition, according to Matthews, Serafin knew he would incur debts beyond his ability to pay. 

As noted, Serafin created the trust almost a year before the lawsuit was filed.  While he did transfer most of his assets into the trust after the lawsuit was filed, it was well before any judgment was entered.  Besides, the almost $1 million worth of assets in the trust is significant compared to the $6,300 owed for past rent.  

The trustees suggest that there is no more difficulty and expense in collecting a judgment owed by a debtor who has $1 million in various bank accounts than a debtor who has $1 million in a revocable trust.  In either case, Matthews could have initiated supplementary proceedings under section 2-1402 of the Code (735 ILCS 5/2-1402 (West 1998)) to discover Serafin’s assets in order to satisfy the unpaid judgment.  We agree.  Section 2-1402 authorizes a "creditor to conduct an examination of a third party [citation], and upon a showing that the third party is holding assets belonging to the judgment debtor, empowers the court to summarily compel the application of discovered assets or income to the satisfaction of the judgment."  
Mid-American Elevator Co. v. Norcon, Inc.
, 287 Ill. App. 3d 582, 587, 679 N.E.2d 387 (1996).  Whether Serafin had his money in a bank account or in a revocable trust, as was the case here
, the court could have ordered that the assets or income from either be applied to satisfy the judgment debt.  But apparently no such motion was made.

As the record fails to indicate that Serafin attempted to avoid the judgment or increase the difficulty and expense for Matthews to collect his debt, we find the trial court’s decision was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed. 

Affirmed.

HOLDRIDGE and LYTTON, JJ., concur.