JOSEPH STEPHENS &
COMPANY, INC.

v.

CIKANEK.

No. 08 C 706.

United States District Court,
N.D. Illinois.

Dec. 1, 2008.

Alison Cohen, Martin Paul Russo, Peter J. Prommer, Nixon Peabody LLP, New York, NY, for Joseph Stephens & Company, Inc.

Leslie Alan Blau, Blau & Malmfeldt, Chicago, IL, Renan Isaac Sugarman, Chicago, IL, for Cikanek.

Todd A. Rowden, Scott P. Clair, Timothy L. Binetti, Thompson Coburn LLP, Chicago, IL, for Citibank, N.A.

AMY J. ST. EVE, District Judge.

## STATEMENT

Following the Court's confirmation of an arbitration award, Respondent David Cikanek ("Cikanek") obtained a final money judgment against Petitioner Joseph Stevens & Company, Inc. ("JSC") and issued citations to discover JSC's assets. Before the Court is Cikanek's petition for a turnover order against Respondent Citibank, N.A. ("Citibank"), regarding a New York deposit account held by JSC and maintained by Citibank. For the reasons discussed below, the Court denies Cikanek's petition.

## BACKGROUND

This case arises from Cikanek's failed relationship with New York brokerage firm JSC and Cikanek's resulting arbitration victory. A more complete description of the facts underlying the final judgment in this case may be found in the Court's July 9, 2008 memorandum opinion confirming Cikanek's arbitration award. *See Joseph Stevens & Co. v. Cikanek,* Case No. 08 C 706, 2008 WL 2705445, *1 (N.D.Ill. July 9, 2008). On July 21, 2008, the Court entered a final money judgment of $238,519, including prejudgment interest. (R. 74–1.) JSC failed to satisfy this award and ceased to operate as a brokerage firm. (R. 93–1, Cikanek's Pet. at 1.) Consequently, on July 23, 2008, Stevens initiated this supplemental proceeding by issuing multiple citations to discover assets pursuant to Federal Rule of Civil Procedure 69 and 735 ILCS5/2–1402. (R. 75–1, 76–1, 78–1.) Third party Citibank responded on August 14, 2008, indicating that "[Citibank] has property that belongs or may belong to [JSC]" and identified a New York deposit account maintained by Citibank (the "New York account") containing $82,688.19. (R. 79–1.) Five days later, Cikanek filed a petition requesting that the Court order Citibank to turn over the full amount in the New York account as partial satisfaction of Cikanek's monetary judgment. (R. 80–1.)

Citibank objects to turning over the funds in the New York account because the New York account secures a standby letter of credit JSC previously obtained in favor of the landlord for its New York offices. According to Citibank, on February 8, 2007, JSC signed a standby letter of credit to Citibank in the amount of $460,000. (R. 91–1, Citibank's Am. Resp. at 2.) To secure this letter of credit, JSC executed a Letter of Credit Assignment and Security Agreement on February 8, 2007, and a related Schedule A, dated February 20, 2007, identifying a specific Citibank deposit account as collateral. (R. 91–3, Ex. B to Citibank's Am. Resp. at 5.) Citibank initially argued that the Standby

Letter of Credit Agreement (the "L/C Agreement") and the Letter of Credit Assignment and Security Agreement (the "Security Agreement") allowed Citibank, in the event of JSC's default, to set-off any of its losses against the New York account. (R. 91–1.) Citibank later moved to amend its Response to add an additional argument under the Uniform Commercial Code ("UCC"). (R. 89–1.) The Court granted Citibank leave to amend its Response, (R. 89–1), allowed Cikanek additional time to reply, (R. 92–1), and following Cikanek's Reply, (R. 93–1), the Court also granted Citibank's request for a sur-reply. (R. 98–1.)

## ANALYSIS

### I.  Relevant Legal Standards

Federal Rule of Civil Procedure 69(a) requires that the procedure for executing a money judgment in a federal proceeding "must accord with the procedure of the state where the court is located." Fed. R.Civ.P. 69(a). As this Court entered the money judgment at issue, Illinois procedure applies. *Id.*

■ Under Illinois law, "A district court may . . . summarily compel the application of discovered assets to satisfy a judgment." *Society of Lloyd's v. Estate of McMurray,* 274 F.3d 1133, 1135 (7th Cir. 2001) (citing *Matthews v. Serafin,* 319 Ill. App.3d 72, 77, 253 Ill.Dec. 201, 744 N.E.2d 934 (2001); *Mid–American Elevator Co. v. Norcon, Inc.,* 287 Ill.App.3d 582, 587, 223 Ill.Dec. 202, 679 N.E.2d 387 (1996)). Illinois procedure under 735 ILCS 5/2–1402 "vests courts with broad powers not only to order discovery, but also to compel ap-

plication of discovered assets to satisfy a judgment." *Id.* (citing *Kennedy v. Four Boys Labor Serv., Inc.,* 279 Ill.App.3d 361, 216 Ill.Dec. 160, 664 N.E.2d 1088 (1996)).[1] In addition, proper service on a third party of a citation to discover assets creates a judgment lien that binds all "personal property belonging to the judgment debtor in the possession or control of the third party." 735 ILCS 5/2–1402(m); *Cacok v. Covington,* 111 F.3d 52, 54 (7th Cir.1997). Nonetheless, this judgment lien "does not affect the rights of citation respondents in property *prior to* the service of the citation upon them." 735 ILCS 5/2–1402(m) (emphasis added).

Citibank does not take issue with the procedure underlying Cikanek's citation to discover assets or motion for a turnover order. Indeed, Citibank responded to Cikanek's citation by identifying the New York account. Instead, Citibank argues that the L/C Agreement and Security Agreement grant Citibank: 1) a perfected security interest, pursuant to Revised Article 9 of the UCC; and/or 2) a right of set-off against the New York account. Under either theory, Citibank claims priority over Cikanek's judgment lien. In its Reply, Cikanek ignored the UCC argument and instead contended that 1) Citibank's right to set-off was immature; and alternatively that 2) Citibank waived any right to setoff by failing to identify its claim in its Response to Cikanek's citation.

### II.  Choice of Law

■ The parties disagree as to whether Illinois or New York law governs their respective interests in the deposit account.

---

1. 735 ILCS 5/2–1402 provides in relevant part:

    A judgment creditor . . . is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment.

    735 ILCS 5/2–1402.

*See, e.g., Gorden v. Kreul,* 77 F.3d 152, 155 (7th Cir.1996) ("Unless a federal statute or regulation supplies a rule of law for the occasion, the court applies the same rules of state law that govern debtor-creditor relations"); *United States v. Rotherham,* 836 F.2d 359, 362 (7th Cir.1988) ("We look to state law to determine the extent of the taxpayer's property interest."). Cikanek apparently contends that Illinois law applies because Illinois procedural law governs this supplemental proceeding. (R. 93–1 at 1–2.) Citibank contends that New York law controls because it "governs the relationship" between Citibank and JSC. (R. 91–1 at 1.) As Citibank's interest in the deposit account arises under the UCC, and as both Illinois and New York have enacted Revised Article 9, Article 9's choice of law provisions apply.

Revised Article 9 provides that "[t]he local law of a bank's jurisdiction governs perfection, the effect of perfection or non-perfection, and the priority of a security interest in a deposit account maintained with that bank." 810 ILCS 5/9–304(a); N.Y. U.C.C. Law § 9–304(a). In addition, § 9–304 provides rules for determining the bank's jurisdiction. 810 ILCS 5/9–304(b); N.Y. U.C.C. Law § 9–304(b). Relevant here is subsection (b)(1), which provides that "[i]f an agreement between the bank and the debtor governing the deposit account expressly provides that a particular jurisdiction is the bank's jurisdiction for purposes of this Part, this Article, or the Uniform Commercial Code, that jurisdiction is the bank's jurisdiction." 810 ILCS 5/9–304(b)(1); N.Y. U.C.C. Law § 9–304(b)(1).

In the case of the New York account, both the L/C Agreement governing its standby letter of credit, (R. 91–2, Ex. A to Citibank's Am. Resp.), and the Security Agreement naming the New York account as collateral, (R. 91–3, Ex. B to Citibank's Am. Resp.), contain choice of law provi-

sions. Paragraph 27 of the L/C Agreement states that "[t]his Agreement and the rights and obligations of Applicant and Citibank hereunder shall be governed by and subject to the laws of the state of New York and applicable U.S. Federal laws." (R. 91–2 at 6.) Thus, the L/C Agreement suggests that New York is the "bank's jurisdiction" pursuant to UCC § 9–304. Were there any doubt, the Security Agreement resolves this doubt by providing in paragraph (h) that the agreement is governed by the laws of the state of New York. (R. 91–3 at 4.) Accordingly, New York law governs perfection, the effect of perfection or nonperfection, and the priority of Citibank's security interest in a deposit account maintained with Citibank.

■ Under New York law, a perfected security interest in collateral grants the secured creditor a superior claim to that collateral as against other creditors. *Liberty Mut. Ins. Co. v. Leroy Holding Co.,* 226 B.R. 746, 754 (N.D.N.Y.1998) (citing *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.,* 882 F.2d 615, 619 (2d Cir.1989)). In addition, a security interest perfected prior to entry of the judgment trumps the rights of an unsecured judgment creditor. *Board of Managers of the Horizon Condo. v. Glick Dev. Affiliates,* 276 A.D.2d 386, 387, 714 N.Y.S.2d 68, 69 (App.Div.2000); *Chrysler Credit Corp. v. Simchuk,* 258 A.D.2d 349, 350, 685 N.Y.S.2d 236, 237 (App.Div.1999); *see also Liberty,* 226 B.R. at 754 ("A perfected security interest thus remains superior to a judgment obtained against the debtor, especially where that judgment arose subsequent to perfection of the security interest and where that judgment had not been further enforced by an execution or levy upon the judgment debtor's property") (citing *Aspen Indus., Inc. v. Marine Midland Bank,* 52 N.Y.2d 575, 439 N.Y.S.2d 316, 319, 421 N.E.2d 808 (1981)).

## III.  UCC Revised Article 9

Revised Article 9 of the UCC governs perfection and priority of security interests in collateral. *Rotherham,* 836 F.2d at 364; *see also Kreul,* 77 F.3d at 155 ("the UCC governs secured creditors' rights against debtors, and debtors' rights against secured creditors."). A "security interest" is "an interest in personal property or fixtures which secures payment or performance of an obligation." N.Y. U.C.C. Law § 1–201(37). The property subject to a security interest, in turn, is known as "collateral." N.Y. U.C.C. Law § 9–102(a)(12). Once a party perfects a security interest in collateral, the interest generally protects the secured party "against creditors and transferees of the debtor and, in particular, against any representative of creditors in insolvency proceedings instituted by or against the debtor." *See, e.g.,* N.Y. U.C.C. Law § 9–308, cmt. 2. Nonetheless, a security interest is generally subordinate to the rights of "a person that becomes a lien creditor" **before** the security interest is perfected. N.Y. U.C.C. Law § 9–317(a)(2)(A). Consequently, unless Citibank attached and perfected its security interest before Cikanek obtained final judgment on July 21, 2008, its interest will be subordinate to Cikanek's judgment lien.

### A.  Collateral

Special rules apply to deposit accounts as original collateral under Revised Article 9.[2] As originally adopted, the scope of Article 9 excluded security interests in deposit accounts from the scope of original collateral. U.C.C. § 9–104(*l*) (1978 Official Text); *see, e.g.,* Bruce A. Markell, *From Property to Contract and Back: An Examination of Deposit Accounts and Revised Article 9,* 74 Chi.-Kent L. Rev. 963 (1999). In drafting Revised Article 9, the Permanent Editorial Board for the UCC

expressed concern that third party security interests in deposit accounts could jeopardize a bank's ability to pay out on obligations or otherwise "impede the flow of funds through the payment system." PEB Study Group, Permanent Editorial Bd. for the Unif. Commercial Code, *Uniform Commercial Code Article 9 Report* at 71 (Dec. 1, 1992) (noting concern that "facilitating the taking of security interests in deposit accounts not impair the functioning of the payment system"). As a result, as discussed below, the UCC contains a number of provisions designed to address these concerns specific to deposit accounts.

### B.  Attachment

Attachment is the moment at which a security interest becomes enforceable. N.Y. U.C.C. Law § 9–203 ("A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment."). In turn, the moment Citibank's interest becomes enforceable is when (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to Citibank; and (3) in the case of deposit account collateral, Citibank has control of the deposit account pursuant to Section 9–104. N.Y. U.C.C. Law § 9–203(b).

▇ Citibank claims that its security interest in the New York account attached on February 8, 2007, the date of execution for the L/C Agreement (R. 91–1, Citibank's Am. Resp. at 5.) Paragraph 12 of the L/C Agreement provides in relevant part, "[a]s further security for the Obligations, Applicant pledges and grants Citibank a security interest in all Deposits (defined below)." (R. 91–2 at 3.) The L/C Agreement defines "Deposits" in the con-

---

**2.** Article 9 broadly defines deposit accounts to include "a demand, time, savings, passbook, or similar account maintained with a bank." N.Y. U.C.C. Law § 9–102(a)(29).

text of Paragraph 19 under the heading, "Set-off." Specifically, "Deposits" includes "any and all deposits (general or special, time or demand, provisional or Final) at any time held and other indebtedness at any time owing by Citibank to or for the credit or the account of Applicant." (R. 91–2 at 5.) This language makes clear that any JSC deposit account maintained by Defendant Citibank, including the New York account, constitutes collateral under the L/C Agreement and further that Citibank claimed a security interest in this collateral. *See, e.g.,* Markell at 1007 (discussing a depository bank's ability to obtain security interests in deposit accounts). In addition, Citibank gave value for its security interest by providing JSC with the standby letter of credit. *See In re Reliable Mfg. Corp.,* 703 F.2d 996, 1000 (7th Cir.1983) ("value" includes "benefit to a third party," such as a letter of credit); 68A Am.Jur.2d Secured Transactions § 242 ("As the security interest is ordinarily entered into in connection with an underlying transaction, the formation of the underlying transaction is consideration for the agreement to create a security interest") (citing *First Nat. City Bank v. Valentine,* 62 Misc.2d 719, 309 N.Y.S.2d 563, 7 U.C.C. Rep. Serv. 821 (Sup.Ct. 1970)). Moreover, it is undisputed that JSC has rights in its own deposit account collateral. Paragraph 1 of the Security Agreement grants Citibank "a first priority on all of its rights ... to all of the Assigned Accounts," including the New York account. (R. 91–3 at 2.)

Finally, as to control, § 9–104(a) provides that "[a] secured party has control of a deposit account if the secured party is The bank with which the deposit account is maintained." N.Y. U.C.C. Law § 9–104(a)(1). Neither party disputes that Citibank is the bank that maintains the New York account. As a result, Citibank has control of the account under Revised Article 9.

As to the date of attachment, the language of the L/C Agreement does not make clear the effective date of the Agreement. Schedule A to the Security Agreement, however, which identifies the New York account as the assigned collateral, is dated February 20, 2007. In addition, this is the same date of the last signature to the L/C Agreement. February 20, 2007, is therefore the date Citibank's security interest in the deposit account attached— well before the final judgment in this case.

## C. Perfection & Priority

Article 9 provides that "a security interest is perfected if it has attached and all of the applicable requirements for perfection in Sections 9–310 through 9–316 have been satisfied." N.Y. U.C.C. Law § 9–308(a). Relevant to deposit accounts, § 9–312 provides that "a security interest in a deposit account may be perfected only by control under Section 9–314." N.Y. U.C.C. Law § 9–312(b)(1). Section 9–314, in turn, states that "[a] security interest in ... deposit accounts ... may be perfected by control of the collateral under Section 9–104 ..." N.Y. U.C.C. Law § 9–314(a). As discussed above, Citibank has control over the New York account pursuant to § 9–104 by virtue of its maintenance of the New York account. Accordingly, Citibank automatically perfected its interest simply by maintaining the New York account. *See* N.Y. U.C.C. Law § 9–104, cmt. 3 ("The effect of this provision is to afford the bank automatic perfection.").

The drafters of the UCC intended this rule—automatic priority in favor of depository banks—to alleviate concerns that judgment creditors or other secured parties could deplete deposit accounts and thus "impede the flow of funds through the payment system":

> [T]he security interest of the bank with which the deposit account is maintained

normally takes priority over all other conflicting security interests in the deposit account, regardless of whether the deposit account constitutes the competing secured party's original collateral or its proceeds. A rule of this kind enables banks to extend credit to their depositors without the need to examine either the public record or their own records to determine whether another party might have a security interest in the deposit account.

N.Y. U.C.C. Law § 9–327, cmt. 4. In effect, then, a depository bank's security interest is usually superior to any other secured interest in a deposit account—unless it specifically agrees to recognize the interest. *See* N.Y. U.C.C. Law § 9–341 ("unless the bank otherwise agrees in an authenticated record, a bank's rights and duties with respect to a deposit account maintained with the bank are not terminated, suspended, or modified by (1) the creation, attachment, or perfection of a security interest in the deposit account; (2) the bank's knowledge of the security interest; or (3) the bank's receipt of instructions from the secured party.").

As Citibank perfected its interest in the New York account at least as early as February 20, 2007, its interest is superior to Cikanek's July 21, 2008 judgment lien. In addition, it is irrelevant whether Cikanek had actual notice of Citibank's security interest, because "all actual and potential creditors of the debtor are always on notice that the bank with which the debtor's deposit account is maintained may assert a claim against the deposit account." N.Y. U.C.C. Law § 9–104, cmt. 3.

Because Citibank's perfected security interest is dispositive, the Court need not consider whether, and to what extent, Citibank possesses a right of set-off under New York common law.

## CONCLUSION

For the foregoing reasons, the Court denies Cikanek's petition for a turn-over order as to the New York account.